You can step up and identify yourself and then expect more punishment after, no, only in humor. I don't think this one's going to be as aggressive. I'm Jennifer Bontrager, State Department Defender for Kente Banks. I'm Assistant State's Attorney Jacqueline James on behalf of the people of State. Alright, and as you saw, we give you quite a bit of leeway. Good morning. May it please the Court. As I just said, I'm Jennifer Bontrager on behalf of Kente Banks. Kente Banks hasn't gotten a fair shake, not at his trial where the judge intimidated a favorable witness and considered improper evidence, and not when the judge imposed a 20-year sentence on a middle-aged man with no background without folding a full sentencing hearing. I raised four issues on Mr. Banks' behalf, and I'm prepared to argue any of them to Your Honors this morning. I'd like to start with the issue that Your Honors most want to hear about. Or if Your Honors have no preference, I'll begin with the witness intimidation. Judges are not allowed to threaten or intimidate witnesses. Let me just ask you, in this circumstance, after the statement by the court, which I'll tell you I certainly don't condone, how did the testimony of the witness change? Didn't she still say that he didn't throw the soup on her, that it spilled by accident? Isn't this situation of intimidation something that would arise if she remained silent after that, or said, I don't want to testify anymore, or abandoned the accident theory and said, that's right, he did really throw it on me, like I said at the preliminary hearing? Well, that is actually exactly what happened. And I don't disagree. Most of the cases generally involve a witness flatly refusing to even retake the stand. But when Ms. Richardson returned to the stand after the judge had announced that she believed Ms. Richardson was lying and was going to have her sanctioned, Ms. Richardson did change her testimony. She did go back. Her initial answer to the very next question was, he threw the soup on me. She went back on her previous disavowal. And after that, she chose one of three answers that were nonresponsive to any of the questions that were asked. For example, counsel tried to ask, when you stated that he threw the hot soup on your face and chest, that was not accurate? And she responded, the soup landed on me. She chose either the soup landed on me, I don't remember, I was angry, regardless of the question. In fact, many of the questions and most of her answers were struck by the judge as nonresponsive. So, no, I don't believe this is any different for purposes of this kind of issue that she physically retook the stand, because Mr. Banks' ability to fully cross-examine this witness was destroyed. This is simply not an appropriate manner to intimidate this witness, threaten her, threaten her with charges, and not even directly threaten her, announce to the courtroom that the judge believes she's lying, that she's going to have her sanctioned. Well, she clearly was lying at some point. It couldn't both be true. Nevertheless, a judge may not announce to the court that she believes she's lying, she's prejudged the case at that point. Well, where does she say which one she believes until the end of the case? She doesn't, but she nevertheless says she's either lying now or she was lying then. Isn't that true? Yes. Okay. But announcing that to the courtroom, instead of, as the case is instructed, instead of addressing the witness and saying, now what you're saying is different from what you've said before, that could be true. You said announcing in the courtroom. There was no jury. True. We don't know who all was in the gallery. If anybody and whether they even cared. So really the issue is the impact on the witness herself and whether this intimidated the witness into changing her story or remaining silent or saying she wouldn't testify anymore or anything of that nature. And that's really the sole focus of the result of what would clearly be not preferred conduct. Absolutely. And that's exactly what happened. She changed her testimony and then she became nonresponsive, which means the judge prevented Mr. Banks from being able to present evidence in his own defense. That right includes the right to a full cost examination of the witnesses, including the state's witnesses. This is a witness who's testifying favorably, but Mr. Banks through counsel is not able to get out crucial information. So she was certainly intimidated. She was effectively driven off the stand, which is exactly what happened in Webb, in King, in Radovich, in several of the cases involving improper admonitions, which requires reversal and remand for a new trial. If your honors have no other questions on that issue, I would then move on to the sentencing, which was not a full sentencing hearing. I don't think there's an issue that this wasn't a full sentencing hearing, unless either of my colleagues want that further explored. I'd like to hear about hedonists. I'm having trouble that I don't see it. I'm sorry, I didn't understand. The charge of hedonist, I don't think it was proven. I agree with your honor. As I argued, both Ms. Richardson and Mr. Banks consistently testified that the soup was spilled as a result of an accident. They were having an argument. Ms. Richardson was following Mr. Banks around the house with a bowl of soup that was admittedly very hot. He went into the bathroom. She followed him. She was very angry. I think Justice Smith's question is about the substance being under the rubric of the type of substance that would create the difference between a battery or an aggravated battery on one hand and a heinous battery on the other. If I understand the question, you're asking if soup is a caustic substance? No. I'm sorry. Is this not more a situation of recklessness possibly or something less than that? Is this not the type of case in the past where it would have been passed and there would have been cross signatures and the case would have been dismissed? I don't know about the last part of your question there, but certainly this is at most recklessness, if not more appropriately charged perhaps as a misdemeanor domestic battery or as just a simple misdemeanor battery. If it's a battery and there's permanent disfiguration, it's not a simple battery in and of itself. And if it's a battery and the substance was within the category of substances that is covered under the heinous battery, it's not just an aggravated battery anymore or a battery anymore. It is a heinous battery. Right? Yes. So you said it's at most a battery. Well, given the intense element that was not proven given Ms. Richardson's testimony and Mr. Banks' testimony that this was a result of a fight, this was accidental. There's no knowing or intentional mental state that's required for heinous batteries. Unless one accepts the substantive evidence, which apparently the trial court did, the substantive evidence contained both in the sworn preliminary hearing testimony at which there was a right for confrontation and the substantive evidence under the other subsection 115.10 for the allegations in the request for an order of protection. But those shouldn't have been accepted given Ms. Richardson's disavowal of her previous testimony. Isn't it always a disavowal? I mean, the whole purpose, whether you agree with it or you disagree with it, and you and I are in the same boat on this that we don't have the right to say the Supreme Court and the legislature decides whether it's going to be accepted as substantive evidence, and they've already made that decision, that that evidence, which only really arises in a circumstance like this where somebody gets on the stand having said A and suddenly says B. So it is substantive. It has to be accepted as substantive. Whether it's believed is the question that's presented to the trier of fact, in this case the judge. Correct. I'm not quite sure what Your Honor is asking me then. Well, you're saying it shouldn't have been received because she disavowed it. I'm sorry. Well, it has to be received, and it would presumably only be received if she had disavowed it. I'm sorry, Your Honor. I was not suggesting that it should not have been received. And if I said that, I was misspeaking. That is not what I meant to say. I was simply saying that it should not have been believed given the disavowal and Ms. Richardson's wholly plausible explanation for her reason for what she previously testified to and what she previously said. Well, what standard do we use to judge that? We have a finder of fact-making facts. The judge heard the disavowal, heard the testimony, and made a finding, I believe, that it was thrown on her. So how do we review that? Review under the standard reasonable doubt standard, the light most favorable to the prosecution, certainly. But even in that light, I believe given the disavowal, the explanation for her disavowal, and Mr. Banks's unimpeached testimony that corroborated Ms. Richardson's in-court testimony before the judge's intimidation occurred, that even in that light, the conviction for heinous battery cannot stand. If your Honor has no other questions, I'd like to reserve any remaining time for rebuttal. Thank you. Thank you. May it please the Court, again, I'm Assistant State's Attorney Jacqueline James on behalf of the people of the State of Illinois. As to defendant's complaint regarding the admonitions, the victim's testimony was wholly supportive of the defendant's story prior to the admonitions, therefore making those admonitions proper and with no effect to the defendant's trial whatsoever. This issue was forfeited because it was not raised at trial in an objection or in a post-trial motion. The standard here is abuse of discretion. And even if the court abuses discretion and improperly deters a witness, the conviction cannot be reversed unless the missing testimony would have had an effect on the defendant's trial. And that's from People v. Johnson. Here are all defendant's cases that were reversed. Were reversed because there was no testimony or the admonitions were made prior to the witness taking the stand, therefore affecting the defendant's trial. Here that isn't the case. There's no prejudice shown. The victim testified in complete favor of the defendant prior to the admonitions. There was no missing testimony. No testimony was chilled. There was no confrontation rights that were affected. Now, even after the testimony, even after the admonition, the victim's testimony stayed consistent. Her first testimony following the recess was, he didn't mean to throw the soup on me. That's showing still that it's consistent with her story, that it was accidentally thrown on her. Now, the court also did not prejudge the victim's testimony because it clearly emphasized when stating its verdict of guilt for the defendant that it based the majority of that finding upon the defendant's incredible testimony, on the fact that he did not believe the defendant's story. The court would not have attributed that much weight to that testimony had the court prejudged the victim's testimony. And again, there's no plain error here because the evidence was not closely balanced and because defendant's rights here were not affected. Defendant's trial was not affected. All the testimony that the victim wanted to testify to in favor of the defendant was presented. As to the defense claim that the state did not prove beyond a reasonable doubt the defendant committed heinous battery, the defendant did prove beyond a reasonable doubt that the defendant intentionally threw boiling hot soup onto the victim, causing burns and permanent disfigurement. It was not reckless because intent was shown clearly through the evidence. The photographs showed the nature and extent of the burns that were consistent with soup being thrown on the victim. Well, aren't those just as consistent with it being accidentally spilled? I mean, the skin doesn't know whether the person who threw the soup intended to do it or not. The skin does not know, Your Honor, but the areas that were burnt, the way that the burns were laid out on her body, on her chest, on her neck, on her back, on the side, behind her ear, is consistent with soup being thrown upon her, not consistent with soup being just spilled on her. She had no burns on her hands, and her preliminary hearing testimony completely coincided with the nature of the burns that she received. The fact that the defendant followed her into the bathroom with a pot of soup he took directly off the stove and threw it upon her. Did the defendant follow her from the kitchen, or did she follow him into the bathroom? According to her preliminary hearing testimony, which is substantive evidence, he followed her into the bathroom with the pot of soup directly off the stove, threw it upon her. And then he didn't go try to get help when his girlfriend was severely burnt. He told her to shut up, according to the victim's preliminary hearing testimony. He didn't want anyone to hear. He didn't let her go to the hospital. He didn't take her to the hospital. He didn't let her talk to the police to get help. This is all very, very consistent with the fact that the defendant intentionally threw the soup on her. And again, the victim's testimony on the stand that he did it accidentally is completely incredible. The story is incredible, and the victim is dating the defendant again. Victim's obviously trying to help out the defendant by testifying on his behalf. And the circuit court found that the state proved this beyond a reasonable doubt. In the light most favorable to the prosecution, and the standard being any rational try or fact to find the elements beyond a reasonable doubt, we'd ask that you don't accept the defendant's invitation to re-weigh the evidence, and that this is exclusively the circuit court's ruling and is something that should stay within the rule of the circuit court. Now, as to the 20-year sentence that the defendant received, this sentence was imposed after both state and defense was given the opportunity to present aggravation and mitigation and was after considering proper factors. I'm looking to see if you're blushing. I'm not, Your Honor. Well, that shows a remarkable self-control. This was no semblance of a sentencing hearing under the law. It was a semblance of a sentencing hearing. She announced it in the next sentence after denying the motion for new trial. Your Honor, the defense did not object. She asked both parties, do you wish to make any statements. Well, maybe they were worried about having sanctions imposed again for talking. She never imposed sanctions. By the way, is the absence of an objection from the defendant to the judge, who's just sentenced you to 20 years, wait a minute, judge, don't I get to say something? That's the obligation of the defendant? Not necessarily, judge, but the defendant did have a complete opportunity in his motion to reconsider to present any additional mitigation, which he failed to do. He based that motion to reconsider upon the fact that the court didn't appropriately weigh the rehabilitative potential of the defendant and the defense lack of background. He did not add any additional factors that he supposedly was prevented from at the sentencing hearing. Well, are you telling me that if I lambasted you into the ground, and the witness into the ground, that you're going to raise in the post-trial motions challenging what I said? Judge, I don't believe that this court lambasted the defendant or the witness when the admonitions were presented. The admonitions were adjourned. Were you ever before this judge? Excuse me? I said, were you ever before this judge? No, I haven't. Oh, you're lucky. The admonitions in response to your question were... She's retired. I've heard that. The admonitions that were made by the judge were in response to the victim stating on the stand that she had not told the truth on her oath during the preliminary hearing testimony. Now, there isn't a proper script that's given when those admonitions are given, but this shows no prejudgment because she did not state in either admonition whether she believed the victim before during the preliminary hearing testimony or after at trial. The 20-year sentence also is appropriate because any sentence above the minimum, the court only needs to find one factor in aggravation, and here the court is obviously looking at the manner of harm in which the... What sentence was the state recommending? What aggravation did the state tell the judge so that the defendant could confront that? Where did she specifically ask the defense attorney if he had anything in mitigation? Where did she give the defendant the right to allocution? The aggravation... She jumped right from denying the motion for new trial with a brief mention of 20 years to telling him what his appeal rights were. That doesn't come close to a sentencing hearing. I understand you're trying to defend the Alamo here, but this is ridiculous. Why don't we move on to a different topic? All right. Well, in aggravation, the evidence that was proven was that the defendant was a cancer patient. She was receiving chemotherapy at the time that this happened, and that the defendant followed her through boiling hot soup upon her... Maybe at the resentencing hearing that can be brought up. Well, this is all evidence that could have been taken into account during... We'll never know, will we? That's true, Justice. We won't know because it wasn't on the record, but it's all in aggravation. And after establishing that aggravation, the court did consider aggravation in mitigation. The defense is asking this court to reconsider and re-weigh those factors, and the Supreme Court has mentioned time and time again that this is exclusively within the circuit court's rule. So therefore, we'd ask that this court decline that invitation. And again, this sentence is closer to the minimum than the maximum amount. In the cases cited by the defendant, the defendant was... In the cases cited by the defendant, the defendant was... This isn't a secondary. Correct. That it hasn't yet occurred. Correct, but... So why don't we move on to a different topic? Okay. Well, because the admonitions did not show prejudgment and were in direct response to the victim's testimony, that it was not stating on the... It was not stating that... Victim's testimony, that it was not... Relax. You don't always get to choose your cases. That's part of it. Now I feel like what it's like to be a public defender sometimes. They don't get to choose their cases either. All right. Can you talk to us a little bit about why you think that this is an excited utterance, unless you want to abandon that also? No, of course. I would love to. The officer's testimony was... I'm not suggesting you abandon anything else. I misspoke. The officer's testimony was an excited utterance under the here's the exception rule, because you can't look at this as a six-and-a-half-hour delay. This is a totality of circumstances situation. And the time that took place between the actual exciting event and the declarant's statement might have been six-and-a-half hours, but the victim was still under the duress of the defendant until three or four in the morning. The victim was held hostage in her own home, with the defendant telling her to shut up, that he didn't want the police to come, not allowing her to go to the hospital. So at most, this was a two- to three-hour time span once the victim got to the hospital, where she was still in pain. With burns, this is a prolonged pain. This is a pain that does not subside. She was receiving treatment when she got to the hospital, and her first opportunity to outcry was to the officer who spoke with her at the hospital. Now, in people view Williams, the time frame between the statement and the exciting event... When you look at the totality of the circumstances test, which clearly is the standard here, it tells you what criteria to look at. One of them, and one of the key ones, the Damon case the Illinois Supreme Court has decided, says excitement caused by the event or condition temporarily stills the capacity for reflection, thus producing statements free of conscious fabrication. Not only do you have a period of either six and a half or eight hours in this circumstance, but you also have a situation where she acknowledged having created a lie during the interim period when the police wanted to speak to her at her apartment when she, in her words, and she didn't put it very well, said, I told them I wasn't there. Clearly the reference is she misidentified herself and said that the person they were looking for, which was her, wasn't there. So she not only is a six and a half or an eight hour period of time more than enough time to suggest that there is time for fabrication, but there actually was an admitted fabrication during that period of time to the police, and this conversation occurred not only after she was able to get to the hospital, but also after she received treatment at the hospital, at which point Officer Kinney came in. Your Honor, at that point in time when she misidentified herself to the police, this was after she had been severely injured at the hands of the defendant. The defendant would not let her go get help. The defendant was telling her to shut up. She had no, there was no opportunity for her to make that outcry because she was in fear of further abuse by the defendant, which she stated in her order of protection. She was scared that he was going to do additional damage. She didn't say that she was in fear at that time. She said that at the time she asked for the order of protection, she was in fear of further abuse in the future. Correct, but anybody who received second degree burns at the hand of their boyfriend, and their boyfriend's telling them to shut up and that he doesn't want anyone to hear and he won't let you talk to the police, she's obviously being held hostage at her apartment with him. She was found not guilty of unlawful restraint by the court. Correct, but, Judge, or Justice, she still felt any person in her situation would not feel that she was free to outcry if he's telling her all these things and he's not allowing her to get help. She asked multiple times if she could go to the hospital, and he would not let her. Until he left her apartment, that was when she finally was able to take herself with all those burns on her body to receive treatment. At that point, she was still under the duress of the defendant and unable to make her outcry to the police. In People v. Williams, it was a six and a half to nine hour delay following the statement. And the court still found the statement an excited utterance because it found it the first opportunity for the victim to outcry. Was that victim unconscious due to the burns or something? No, no. In this case? Williams. Oh, no. In Williams, it was after a child had seen the murder of his parents and of his siblings. And he was not unconscious. He was kidnapped at that time. And he made a statement to a witness who was there. I saw there's a similar case where individuals were burned, tied up and burned, and they lost consciousness and there was maybe a day or two delay and they said excited utterance. Here the victim was conscious during this entire eight hour period. Is that right? Yes, the victim was conscious. And how many hours before she talked to the policeman was she away from the defendant? It was at most two to three hours. But this was when she was receiving treatment. And there's no indication in the record that this isn't the first opportunity she had to outcry. She was receiving treatment at that time at the hospital. When she spoke to the officer, she was still in severe pain. She was so upset she had difficulty speaking to even tell him what had happened to her. The critical inquiry is whether the excitement of the event predominated. And here it's clear that the excitement was still predominating. Regardless, though, if the court erred in allowing the officer's testimony in, under People v. Nesbitt the standard is whether there's a reasonable probability that the defendant would have been acquitted but for this testimony being admitted. And here that's clearly not the case. Officer's testimony was merely cumulative of the other evidence, and the court obviously did not rely on it when coming to its guilty verdict because it didn't even mention it as a basis of its guilty verdict. For these reasons and those stated in the People's Brief, we ask that the court affirm defendant's conviction and sentence. Thank you. First of all, on the intimidation issue, the standard of review is actually de novo, as set forth by the Supreme Court in King and also affirmed in Vaughan. This issue was not forfeited. It was included in and argued extensively in the post-trial motion. The courts generally recognize the practical difficulties of a contemporaneous objection in judicially created errors such as this. And Mr. Banks was prevented from a complete cross-examination. On the reasonable doubt, I would note that the State presented nothing to support its assertion that the nature of the burns indicated throwing of soup versus spilling of soup. And if Your Honors have no other questions? How was the cross-examination inhibited? The witness was effectively driven to non-responsiveness. She changed her testimony. She wouldn't answer questions in response to them. Can't you establish that through cross-examination? Can't I establish what through cross-examination? That the witness is becoming non-responsive. I mean, that's exactly what was illustrated, but defense counsel was prevented. She already testified in direct examination, in essence, that the defendant did nothing wrong. That's true. So what did he lose, even if there was some reticence thereafter? He lost the ability to have her explain why she came back. First of all, she changed her testimony. Her first response upon coming back was change testimony. She then refused to provide a direct answer to explain why she had done that. Defense counsel tried to get out some explanations for some inconsistencies. There were several points in which he was simply unable to get any answers that were useful, would have been useful, presumably to his defense. If there are no other questions, I would implore this Court to show Kente Banks the fairness that he has not yet experienced from our justice system. Thank you. Thank you. We'll take these under advisement and get back to you on both of those delightful cases.